# THE PREROGATIVE COURT

OF

## THE STATE OF NEW JERSEY.

**OCTOBER TERM, 1906.**

---

WILLIAM J. MAGIE, ORDINARY.
JAMES J. BERGEN, VICE-ORDINARY.

---

In the matter of the estate of WINIFRED GODFREY.

[Argued October 16th, 1906. Decided November 23d, 1906.]

1. When an application is made to an orphans court for an order directing an administrator to sell lands of his intestate for the payment of debts, on the ground that the personal estate is insufficient, under the provisions of sections 82 to 90 of the Orphans Court act of 1898, and upon the return of the rule to show cause issued thereon it appears that the personal and real estate of intestate are, and are known to the administrator to be, together insufficient to satisfy the debts claimed—*Held*, that the orphans court may decline to make the order of sale, because the application should have been made under sections 99 to 110 of the act, the estate being insolvent under those sections.

351

2. The proofs before the orphans court justified the inference that the administrator, in making the application under section 82 *et seq.*, instead of under section 99 *et seq.*, acted in bad faith.—*Held further*, that the orphans court may decline to make the order of sale on that ground.

On appeal from Hudson county orphans court.

*Mr. Edward Kenny,* for the appellant.

*Mr. James A. Gordon,* for the respondent.

MAGIE, ORDINARY.

The appeal brings into review an order of the Hudson county orphans court, refusing to make an order for the sale of lands of Winifred Godfrey, deceased, by her administrator, for the payment of her debts.

The matter was first argued by briefs filed at February Term last. Upon taking up the papers for consideration, I found that the transcript did not disclose the ground on which the order objected to had been made. I therefore directed a reargument, in the hope that the opinion of the orphans court would be obtained and furnished me. It has now been reargued, but no opinion of that court is before me. I am therefore compelled to conjecture upon what ground the order was made.

The conduct of the case in the orphans court, as disclosed by the transcript sent up, was somewhat unusual. It thereby appears that, on July 8th, 1894, the administrator presented to the orphans court a petition for the sale of the lands in question, accompanied by a statement of the personal estate of the deceased and of the debts of deceased. The statement, which was sworn to by the administrator, showed that she left no personal estate, and that her debts for doctor's and undertaker's bills and other small items amounted to $267.90, and that a claim of Catharine M. Godfrey had been made against the estate of deceased for $3,598. Upon this petition a rule to show cause was made and brought to hearing on September 23d, 1904. The administrator was then sworn, and on his evidence it was clear that deceased had left personal estate amounting to over $400,

and that his affidavit to his statement was untrue.   Thereafter, without any action upon the rule still pending, the administrator, on November 18th, 1904, presented another petition for the sale of the same lands, accompanied by a statement showing that deceased had left personal property to the amount of $132.28 and debts of small amount as before, amounting to $291.57, and the claim of Catharine M. Godfrey was included at $3,598, with commissions and expenses (apparently estimated) $100.   As a result there was a deficiency claimed of $3,557.19. Another rule to show cause was issued upon this petition, and although the proofs of publication as printed seem defective, yet when it was brought to hearing on January 27th, 1905, the sole heir-at-law appeared by her proctor, without objecting to the proofs, and opposed the granting of the order asked.   Thereupon further testimony was taken, during which, upon a colloquy between court and counsel (no order being asked or made by the court), the administrator called Catharine M. Godfrey as a witness, and she was examined, without objection, respecting the particulars of her claim against the estate of the deceased. It thereby appears that her claim was made up of two items, one for money earned by her while a minor and handed to deceased, with whom she lived, amounting, it was said to over $3,000, and the other for services rendered to deceased during her last illness. The precise amount of each claim of Catharine M. Godfrey is not disclosed in the printed case.

It further appeared that the administrator was the husband of the deceased and had left her many years before her death and never returned to her.   When he left, two of his children by a former wife (one of whom was Catharine M. Godfrey) remained with deceased.   Catharine M. Godfrey continued living with her stepmother until the death of the latter.   She went to work when about eleven years of age, and, if her story be credited, she gave all her earnings to her stepmother.   She was furnished with board and lodging by her stepmother during the whole period.

Catharine M. Godfrey further testified that her stepmother had told her, when she received her earnings, that after the stepmother's death "everything would be hers."

Upon all the proofs before the orphans court I draw the con-
clusion that the application of the administrator for the sale
of the land was not in good faith.

The petitions were obviously made upon the sole ground that
the personal estate of decedent was insufficient to discharge her
debts. Such an application is made under the provisions of sec-
tions 82 to 90 of the Orphans Court act of 1898. *P. L. 1898 p.
744.* Yet both of them, when considered with the admissions
of the administrator, distinctly disclosed that not only was the
personal estate insufficient to pay the debts set up, but that all
her estate, real and personal, was insufficient for such payment.
The administrator swears, and produces evidence to the effect,
that the land he seeks to sell is worth not over $1,800. It will,
obviously, be insufficient to pay the deficiency represented by the
administrator.

The petition ought to have been made under the provisions
now contained in sections 92 to 110 of the present Orphans Court
act. *P. L. 1898 p. 752.*

The election by the administrator to proceed under section 82
*et seq.,* rather than under section 99 *et seq.,* was matter of serious
importance to the heir-at-law acquiring title to the lands by
descent. By the settled construction of the legislation now em-
bodied in the former sections, the orphans court was without
jurisdiction to settle disputed claims on the estate of decedent.
*Miller* v. *Pettit,* 16 N. J. Law (*1 Harr.*) *421; Vreeland* v. *Vree-
land's Administrator,* 16 N. J. Eq. (*1 C. E. Gr.*) *512; Smith* v.
*Smith's Administrator,* 27 N. J. Eq. (*12 C. E. Gr.*) *445; Part-
ridge* v. *Partridge,* 46 N. J. Eq. (*1 Dick.*) *434; S. C.,* 47 N. J.
*Eq.* (*2 Dick.*) *601; Pitcher's Case,* 61 N. J. Eq. (*16 Dick.*) *614.*

If the administrator could elect to proceed under section 82,
it will be observed that, upon the construction given to those
provisions, the heir-at-law was powerless to contest any claim
made upon the administrator, except by giving bond with
security, under the provisions of section 89. In this case the
heir-at-law would have been obliged to give security to pay over
$3,500, if established by action, in order to preserve from sale
real estate worth no more than $1,800.

On the other hand, if the administrator had applied, as he

could and ought to have done, to have the sale made under the insolvent estate sections of the act, it would have been open to the heir-at-law, as a person interested, to file exceptions to the claim and demand of Catharine M. Godfrey, under which Catharine M. Godfrey would have been compelled to submit her claim to the orphans court, unless she elected to submit it to the judgment of a court of law or equity.   Sections 104 and 105.

Upon the proofs before the orphans court, if produced in the court of chancery upon a bill to restrain the administrator from selling the land upon such an order, I think that an injunction would have been granted.   *Doll* v. *Cash, 61 N. J. Eq.* (*16 Dick.*) *108; First Baptist Church* v. *Syms, 51 N. J. Eq.* (*6 Dick.*) *363; S. C., 52 N. J. Eq.* (*7 Dick.*) *545.*

But was it necessary for the orphans court, upon these proofs, to proceed to make an order for sale of lands, and leave the heir-at-law to the expensive proceeding in equity to enjoin the sale, to enable him to contest a claim which he disputed?   In my judgment it was not.   In *Smith* v. *Smith, ubi supra,* that learned and practical judge, Chancellor Runyon, while admitting that in such a proceeding the orphans court, upon the settled construction of the legislation, was bound to accept the report of the administrator as to the amount of debts, added this significant exception, viz., "unless, indeed, the *bona fides* of his statement be assailed."   In my judgment such an exception to the rule must be admitted, and I do not think it can be limited, on principle, to the two instances which he states, viz., whether the claims reported have been presented to him, or whether the amounts thereof have been misstated.   Whatever shows a want of good faith on the part of the administrator in making the application may invoke the action of the orphans court.

In the case in hand want of good faith abundantly appears.

*First.* He refrained from proceeding under the insolvent estate sections of the statute, under which the heir-at-law could have excepted to any claims, and sought the order under the sections which practically debarred the heir-at-law from making any contest.

*Second.* He included in the claims some which he, as husband of decedent, was liable for.

*Third.* He included therein the claim of his daughter. If she was unemancipated her earnings belonged to him. If he sought to recover them from his wife's estate obviously they would be subject to deduction for the support of his wife and daughter, which he admittedly had not furnished. If the daughter was emancipated, so as to be entitled to her own earnings, and to recover them from her stepmother or her estate, obviously they would be subject to deduction for her support and maintenance furnished by the stepmother. Yet the administrator admits the claim in full and seeks the order thereon.

There are other suspicious circumstances bearing on the good faith of the administrator in making this application, but the above seem to me sufficient to justify the orphans court in refusing to order a sale.

The order appealed from will, therefore, be affirmed, with costs.